IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Bassey A. Eyo, ) | C/A No.: 5:12-3345-JMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| Orangeburg Consolidated School ) | |
| District Five, ) | |
| ) | |
| Defendant. ) | |
| ) | |

In this employment discrimination case, Bassey A. Eyo ("Plaintiff") is suing her former employer, Orangeburg Consolidated School District Five ("Defendant"). Plaintiff's amended complaint alleges claims of: (1) hostile work environment, discrimination, and retaliation under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, et seq. ("ADA"); (2) hostile work environment, national origin discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"); and (3) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA"). [ECF No. 1].

This matter comes before the court on Defendant's motion for summary judgment filed on June 27, 2014. [ECF No. 32]. This motion having been fully briefed [ECF Nos. 40, 46], it is ripe for disposition. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the

reasons that follow, the undersigned recommends the district court grant the motion for summary judgment.

I.    Factual Background

Plaintiff is an African-American woman over the age of 40, who was born in Nigeria. She was employed by Defendant from 1998–2012. Pl. Aff. at ¶¶ 12–15, available at ECF No. 40-2. She was assigned to teach at Robert E. Howard Middle School ("RHMS") beginning in 2009. *Id*. at ¶ 15.

### 2009–10 School Year

Defendant's concerns with Plaintiff's teaching performance at RHMS began in the 2009–10 school year. In a letter to Plaintiff dated November 5, 2009, RHMS Principal Dr. Jacqueline Vogt[1] counseled Plaintiff regarding an incident in which Plaintiff left a student in the hallway unsupervised for an extended period of time. [ECF No. 32-2 at 13–14]. Dr. Vogt expressed in the letter her increased concerns regarding Plaintiff's classroom management and frequent tardiness. *Id*. Dr. Vogt also memorialized her concerns about Plaintiff's classroom management and failure to log minor misbehavior in a letter dated January 29, 2010. *Id*. at 11–12. Plaintiff responded to the letter on March 31, 2010, indicating that she logged anecdotal notes[2] in her personal notebook, which she provided Dr. Vogt on request. [ECF No. 40-16].

By memorandum dated February 1, 2010, RHMS Curriculum Coordinator Octavia

---

[1] Dr. Vogt is also referred to as Dr. Inabinette and Dr. Vogt-Inabinette throughout the record. The undersigned refers to her as Dr. Vogt for ease of reference.

[2] Although it is not clear from the record, it appears that teachers were required to use a "PBIS minor incident log sheet" to track students' inappropriate behavior. [ECF No. 32-2 at 13]. It appears that Plaintiff is refers to the logging of inappropriate behavior as keeping anecdotal notes. [ECF No. 40-16].

2

Green communicated to Plaintiff her concerns regarding Plaintiff's failure to: (1) set parameters for class projects, (2) timely give progress reports, (3) allow students an opportunity to improve in accordance with school policy, and (4) log minor misbehavior. [ECF No. 32-2 at 9–10]. For each of the areas of concern, Ms. Green provided Plaintiff suggestions for improvement.

On February 22, 2010, Dr. Vogt again wrote her concerns about Plaintiff's maintaining an environment that promotes learning and managing the classroom. *Id.* at 6–7. On April 1, 2010, Dr. Vogt advised Plaintiff that as a result of her job performance, she would be formally evaluated during the 2010–11 school year. *Id*. at 4–5. On April 30, 2010, Dr. Vogt again advised Plaintiff of her concerns about Plaintiff's ability to maintain safety and manage the classroom. *Id*. at 2–3. The letter states that students informed Dr. Vogt that paper, pencils, erasers, and a book were thrown in Plaintiff's classroom and that she had called their homes and accused them of assaulting her. *Id*. Plaintiff admitted that students had thrown objects in her classroom on April 27–29, 2010, but she did not report any assault. *Id*. Dr. Vogt noted that only 15 of 60 students were making a passing grade in Plaintiff's class. *Id*.

On May 4, 2010, Plaintiff reported to RHMS Assistant Principal Bassingame that students had thrown coins in her advisement class, although it appears that she was only able to identify one of the students. [ECF No. 40-10]. Plaintiff wrote Dr. Vogt a letter dated May 19, 2010, complaining that students were throwing items at her and that she was being blamed for students' misbehavior. [ECF No. 40-11].

## 2010–11 School Year

Defendant's concerns with Plaintiff's performance continued in the 2010–11 school year. On September 8, 2010, Dr. Vogt advised Plaintiff in writing of concerns with her performance. [ECF No. 32-3 at 2–4]. For example, Dr. Vogt referred to an incident in which students in Plaintiff's classroom were making videos and posting them to Facebook. The videos showed some of Plaintiff's students dancing, singing, and waving at the camera while making a musical beat by hitting the desks/tables. *Id*. On September 22, 2010, Dr. Vogt again addressed concerns with Plaintiff's classroom management. *Id*. at 5–7. Specifically, Dr. Vogt referred to an observation in which students were sleeping, talking excessively, and failing to pay attention. *Id*. The letter states that administrators had tried to support Plaintiff by planning conferences with parents of problem students, but Plaintiff had failed to provide a list of the students. *Id*.

By letter dated October 29, 2010, Ms. Green again addressed her concerns with Plaintiff's management of her students. *Id*. at 8–9. Plaintiff was placed on administrative leave from November 19, 2010–June 29, 2011, as a result of an incident in which she allegedly struck a female student. *Id*. at 10–11. Ultimately, Plaintiff was not criminally convicted of assault and battery, and Defendant was unable to conclude that Plaintiff acted inappropriately based on conflicting witness statements. *Id*. Plaintiff was allowed to return for the 2011–12 school year. Id.

## 2011–12 School Year

The 2011–12 school year was Plaintiff's final year that she was employed by Defendant. The principal at RHMS during the 2011–12 school year was Renee Bowman.

4

Bowman Dep. at 17:19–22.³ As principal, Ms. Bowman notified Plaintiff that Dr. Vogt had recommended her for formal evaluation. *Id.* at 18:1–9. Ms. Bowman noted that the biggest concern regarding Plaintiff was her classroom management. *Id.* at 18:20–19:2. Ms. Bowman stated that she had to place an additional adult in Plaintiff's classroom to assist with her classroom management. *Id.* at 22:18–23:17. Ms. Bowman also testified that to the extent Plaintiff expressed concerns regarding the behavior of students in the classroom, she investigated Plaintiff's concerns and, when Plaintiff could identify the student, she disciplined the student. *Id.* at 23:21–24:17, 29:19–30:18, 31:13–32:15.

In a letter to Ms. Bowman that indicates it was written on November 7, 2011, and hand-delivered on December 16, 2011, Plaintiff complained of the following: "(1) written documents that are misleading about [her] work; (2) administrative support or actions that are lacking, inconsistent, inequitable, or hyper-critical; (3) unsafe work environment; and (4) nationality and age discrimination." [ECF No. 40-12 at 1]. In this document, Plaintiff alleges that a student had assaulted her on October 20, 2011. In addition, Plaintiff lists 19 incidents between August 28, 2011, and November 8, 2011, which she characterizes as showing a pattern of nationality and age discrimination and a physically-unsafe environment. *Id.* at 4. All of the incidents involved actions taken by students, not employees of Defendant. When Plaintiff informed school administration about these incidents,⁴ it appears the students were disciplined, including suspensions. [ECF No. 40-5 at 32–33, 35].

---

³ Ms. Bowman's deposition can be found at ECF No. 32-8.
⁴ Plaintiff provided copies of discipline referral forms, showing when she referred a student to RHMS administration for discipline. The referrals provided appear to include only three of the nineteen incidents she cites in the letter. [ECF No. 45].

Ms. Bowman also served on Plaintiff's formal evaluation team, which ultimately concluded that Plaintiff receive a rating of "non-met" for the year, which means that her performance under the evaluation was unsatisfactory. [ECF No. 32-4 at 2–25]. As a result of Plaintiff's teaching performance, including the 2011–12 school year, Superintendent Cynthia Wilson recommended that her contract not be renewed for the 2012–13 school year. Id. at 26–27. By letter dated April 13, 2012, Ms. Wilson advised Plaintiff of her recommendation. *Id*. Plaintiff subsequently submitted letters of resignation. [ECF No. 32-6 at 2–4].

## **Disability**

In 2004, Plaintiff fell and hurt her leg in October 2004. Pl. Dep at 37:2–38:14. She alleges that she has difficulty walking long distances, prolonged walking and sitting, walking fast, climbing stairs, running, kneeling, and jumping. Pl. Aff. at ¶ 18. Plaintiff states that she was denied a reasonable accommodation from August 2010 through December 2011, but admits that she was on paid administrative leave from November 2010 until June 2011. Pl. Dep at 227:1–8. Plaintiff was informed in a letter dated June 29, 2011, from the superintendent that she would be allowed to return from paid administrative leave for the 2011–12 school year. [ECF No. 32-3 at 10–11]. The letter also states:

> At the time of your placement on administrative leave, you communicated with the District regarding possible accommodations as a result of some medical issues you were having. If those issues have not been addressed during the time you were on leave, please contact Dr. Sharon Berry-Quinn to discuss accommodations that may be necessary or appropriate.

*Id*. Plaintiff testified that Ms. Bowman accommodated her with a room request and that

she never contacted Berry-Quinn. Pl. Dep. 228:19–24. Ms. Bowman also allowed Plaintiff to park in a handicap parking space close to the front of the school. Bowman Dep. 40:8–41:1. Ms. Bowman testified that Plaintiff never gave her any indication that she was not satisfied with her accommodations. *Id.* at 52:19–53:10.

II. Discussion

    A.    Standard on Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255.

    B.    Analytical Framework

Whether proceeding under the ADA, Title VII, or the ADEA, absent direct evidence of discrimination, Plaintiff must prove her allegations under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. Under *McDonnell Douglas*, Plaintiff first must establish by a preponderance of evidence each element of her prima facie case of discrimination. *Id.* at 802.

7

If Plaintiff establishes a prima facie case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the adverse employment action. *Texas Dep't. of Cmty Affairs v. Burdine*, 450 U.S. 248, 254 (1981). This is merely a burden of production, not of persuasion. *St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 506 (1993).

Once Defendant has met its burden of production by producing a legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination *vel non.*" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citing *Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reason, but was pretext for discrimination. *Reeves*, 530 U.S. at 143. Throughout the burden-shifting scheme set forth in *McDonnell Douglas*, the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude Defendant intentionally discriminated against her.

    C.    Analysis

        1.    ADA Claims

            a.    Hostile Work Environment

To establish a claim for hostile work environment under the ADA, Plaintiff must show that: (1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; (4) the

8

harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer. *See Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001). Plaintiff has not submitted any evidence of unwelcome harassment based on her disability. Although she vaguely claims that "[i]n 2010-2011, I was informed by administration that I could either get a wheel chair or quit my job," Pl. Aff. at ¶ 66, one isolated incident is insufficient to show that the alleged harassment was so severe or pervasive to alter a term, condition, or privilege of employment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (stating that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment") (internal quotation marks and citations omitted); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 768 (1998) (finding that a plaintiff must prove more than a few isolated incidents of alleged harassment to establish a hostile work environment). Therefore, Defendant is entitled to summary judgment on Plaintiff's claim of hostile work environment based on her alleged disability.

    b.  Discrimination/Failure to Accommodate

To establish a prima facie failure-to-accommodate claim, a plaintiff must allege facts showing: (1) that she was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of the position; (4) that the employer refused to make such accommodations. *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387, n. 11 (4th Cir. 2001) (citing *Mitchell v. Washingtonville Cent. Sch. Dist.*,

9

190 F.3d 1, 6 (2nd Cir. 1999)). "Implicit in the fourth element is the ADA requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation." *Haneke v. Mid-Atlantic Capital Mgmt.*, 131 F. App'x 399, 400 (4th Cir. 2005) (citing 29 C.F.R. § 1630.2(o) (3)).

The record before the court is sparse regarding Plaintiff's request for a reasonable accommodation, but reveals the following:

- Plaintiff requested a reasonable accommodation in August 2010. Pl. Aff. at ¶ 40.

- Plaintiff's physician submitted to Defendant an explanation of her disability on September 29, 2010. *Id*. at ¶ 42.

- Plaintiff was placed on paid administrative leave from November 19, 2010, until June 2011. Pl. Dep at 227:1–8; ECF No. 32-3 at 10–11.

- A letter dated June 29, 2011, from the superintendent informing Plaintiff she would be allowed to return from paid administrative leave for the 2011–12 school year, noted that Plaintiff had previously "communicated with the District regarding possible accommodations as a result of some medical issues [she was] having." [ECF No. 32-3 at 10–11]. The letter further instructed Plaintiff to contact Dr. Sharon Berry-Quinn to discuss accommodations that may be necessary or appropriate. *Id*.

- Ms. Bowman accommodated Plaintiff with a room request and Plaintiff never contacted Berry-Quinn. Pl. Dep. 228:19–24. Ms. Bowman also allowed Plaintiff to park in a handicap parking space close to the front of the school. Bowman Dep. 40:8–41:1.

- Ms. Bowman testified that Plaintiff never indicated that she was not satisfied with her accommodations. *Id*. at 52:19–53:10.

Plaintiff has failed to offer any evidence that she made a request for a specific accommodation that Defendant refused. Plaintiff's allegations in her affidavit regarding her requests for accommodations are vague, often refer to multiple years, and do not state that Defendant refused such requests. Pl. Aff. at ¶¶ 19–21. Therefore, based on the record

before the court, Plaintiff has not made a prima facie showing that Defendant refused to provide her with a reasonable accommodation.

       c.  Retaliatory Discharge

A plaintiff establishes a prima facie case of retaliatory discharge under the ADA if she demonstrates that: (1) she is within the ADA's protected class; (2) she was discharged; (3) at the time of her discharge, she was performing the job at a level that met her employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Harris v. Reston Hosp. Ctr., LLC*, 523 F. App'x 938, 947 (4th Cir. 2013). Plaintiff cannot make a prima facie case of retaliatory discharge because she cannot show that she was performing at a level that met her employer's legitimate expectations.

"Whether an employee is performing at a level that meets legitimate expectations is based on the employer's perception, and [the plaintiff's] own, unsubstantiated assertions to the contrary are insufficient to stave off summary judgment." *King v. Rumsfield*, 328 F.3d 145, 149 (4th Cir. 2003) (stating that plaintiff's own testimony of satisfactory job performance cannot establish a genuine issue as to whether he was meeting his employer's expectations). In considering whether a claimant was adequately performing her job, it is the perception of the decision maker which is relevant, not the self-assessment of the claimant. *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997), *overruled on other grounds by*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

11

The record in this case is replete with evidence that Plaintiff's performance was not meeting Defendant's legitimate expectations. She was counseled multiple times in all three years she was employed at RHMS, with two different principals supervising her. *See* Factual Background, *supra*; *see also Mahomes v. Potter*, 590 F. Supp. 2d 775, 782–83 (D.S.C. 2008) (finding that an employee who had accumulated multiple disciplinary infractions in a relatively short period was not meeting her employer's legitimate expectations). Therefore, because Plaintiff cannot show she was performing the job at a level that met her employer's legitimate expectations, she has failed to make a prima facie case of retaliatory discharge under the ADA.

        2.      Title VII Claims

            a.      Hostile Work Environment

To establish a prima facie case of a hostile work environment under Title VII based on national origin, a plaintiff must show that the offending conduct (1) was unwelcome, (2) was because of her national origin, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer. *Ziskie v. Mineta*, 547 F.3d 220, 224 (4th Cir. 2008) (citations omitted). Plaintiff has not provided any evidence that any administrator or employee of Defendant engaged in offending conduct related to her national origin. Further, Plaintiff has not made any argument that any offending conduct from her students is imputable to Defendant. Plaintiff has not offered evidence that Defendant failed to discipline a student that Plaintiff specifically identified as engaging in

12

offending conduct based on her national origin. Therefore, Plaintiff has failed to make a prima facie case of a hostile work environment.

### b.     Discrimination

To state a prima facie case of discrimination under Title VII, Plaintiff must prove: (1) she is a member of a protected class; (2) she was performing satisfactorily; (3) she suffered an adverse employment action; and (4) similarly-situated employees received more favorable treatment. *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (Title VII); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (ADEA). For the reasons discussed supra, Plaintiff has not shown that she was performing her job satisfactorily. Therefore, she has failed to establish a prima facie case for national origin discrimination.

### c.     Retaliation

To establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) she engaged in protected activity; (2) her employer took adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse action. *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998). Plaintiff does not specify in what protected activity she engaged. To the extent that Plaintiff alleges her protected activity is her December 16, 2011, letter alleging nationality and age discrimination, she has failed to show that such activity is protected.

The Fourth Circuit has held that "activity is protected when it responds to an employment practice that the employee reasonably believes is unlawful." *Jordan v.*

13

*Alternative Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006). The Fourth Circuit balances the purpose of anti-retaliation statutes against "Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." *Laughlin*, 149 F.3d at 259 (internal quotation marks omitted). Accordingly, anti-retaliation laws do not "protect employees who, with no more than good faith, complain about conduct that no reasonable person would believe amounts to an unlawful employment practice." *Jordan*, 458 F.3d at 342. Instead, the employee's belief that the conduct of which she complains actually violates the statute in question must be an objectively reasonable one, and whether the employee's belief is reasonable is a question of law for the court. *Id.* at 339.

Plaintiff's letter dated December 16, 2011, lists only incidents in which students engaged in offensive conduct. The letter is devoid of any allegation that Defendant failed to discipline a student after Plaintiff reported offensive behavior based on national origin. Because no reasonable person would believe that students' name-calling or insulting a teacher amounts to an unlawful employment practice by the school district, Plaintiff's complaints of such conduct are insufficient to constitute a protected activity. Therefore, Plaintiff's failure to engage in an activity protected by Title VII is fatal to her prima facie case for her Title VII retaliation claim.

### 3. Age Discrimination Claim

In *Hill v. Lockheed Martin Logistics Mgt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004), the Fourth Circuit noted that establishing a prima facie case of discrimination under Title VII and the ADEA relies on the same analytical framework. Therefore, Plaintiff is

14

required to show that she was performing her job satisfactorily to make a prima facie case under the ADEA. For the reasons discussed *supra*, Plaintiff is unable to show she was satisfactorily performing her job.

Plaintiff states in her affidavit that she requested a transfer in August 2011 and was told no positions were available, but that a younger, less-qualified position was hired as a biology teacher at the high school. Pl. Aff. at ¶¶ 50–52. Plaintiff provides no evidence of this allegation such as the name of the teacher or how Plaintiff has determined that the new teacher was less-qualified. Regardless, Plaintiff's performance was below expectations as early as 2009, causing her to be formally evaluated. Therefore, Plaintiff has not set forth a prima facie case of national origin or age discrimination.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendant's motion for summary judgment [ECF No. 32] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

December 5, 2014                                    Shiva V. Hodges
Columbia, South Carolina                            United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).