## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## ORANGEBURG DIVISION

| | | |
|---|---|---|
| Bassey A. Eyo, | ) | Civil Action No. 5:12-cv-03345-JMC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| Orangeburg Consolidated School District | ) | |
| Five, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Bassey A. Eyo ("Plaintiff") filed this action against her former employer, Defendant Orangeburg Consolidated School District Five ("Defendant"), alleging that she was subjected to (1) retaliation for engaging in protected activity, (2) a hostile work environment because of her disability and national origin, and (3) discrimination because of her age, disability, and national origin, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634.  (ECF No. 1.)

This matter is before the court on Defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 ("Rule 56 motion").  (ECF No. 32.)  In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(g) D.S.C., the matter was referred to United States Magistrate Judge Shiva V. Hodges for pretrial handling.  On December 5, 2014, the Magistrate Judge issued a Report and Recommendation in which she recommended that the court grant Defendant's Rule 56 motion as to all Plaintiff's claims.  (ECF No. 47.)  Plaintiff filed objections to the Magistrate Judge's Report and Recommendation, which are presently before the court.  (ECF No. 48.)  For the reasons set forth below, the court **ACCEPTS IN PART AND REJECTS IN PART** the

Magistrate Judge's recommendation and **GRANTS IN PART AND DENIES IN PART** Defendant's Rule 56 motion. The court grants the Rule 56 motion as to Plaintiff's claims alleging a hostile work environment on account of her disability, disability discrimination, national origin discrimination, retaliation, and age discrimination. The court denies the Rule 56 motion as to Plaintiff's claim for a hostile work environment on account of her national origin.

## I.     RELEVANT BACKGROUND TO PENDING MOTION

The facts of this matter are discussed in the Report and Recommendation. (See ECF No. 47.) The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate and incorporates it by reference. The court will only reference herein additional facts viewed in the light most favorable to Plaintiff that are pertinent to the analysis of her claims.

Plaintiff is a seventy-one (71) year old, African-American female, who was born in Nigeria. (ECF No. 40 at 4 ¶ 1.) After attaining her bachelor's, master's and doctoral degrees, Plaintiff was employed as a professor of biology at Claflin University and South Carolina State University for approximately twenty-five (25) years. (ECF No. 40-2 at 1 ¶¶ 4–6.) In 1998, Plaintiff obtained her State of South Carolina Teaching Certification and began working for Defendant as a teacher of biology at Orangeburg-Wilkinson High School ("OWHS"). (ECF No. 40 at 5 ¶¶ 4–5.) Plaintiff taught biology at OWHS from 1998 to 2004 and from 2007 to 2009. (Id. at ¶¶ 5, 7–8.)

In 2009, Defendant assigned Plaintiff to teach science (physical science, earth science, and space science) to eighth graders at Robert E. Howard Middle School ("RHMS"). (Id. at ¶ 8.) Plaintiff had a difficult time teaching at RHMS. She asserts that students routinely harassed her with physical assaults, such as by pushing her and throwing things at her (e.g., broken pencils,

balls of paper, books, dead cockroaches, oranges, sand, door stoppers, tennis balls, clay, water, and coins), and verbal assaults, including derogatory statements, insults, and threats of harm. (ECF No. 40-15 at 2; see also ECF No. 40 at 6 ¶ 12, 7 ¶ 18, 9 ¶¶ 24, 28, 12 ¶ 39, 13 ¶ 42.) Plaintiff asserts that Defendant did not do anything to "remedy the relentless assault, insult, and harassment," but also acknowledges the instances where her referrals of students for discipline where acted on by Defendant. (Compare ECF No. 40-15 at 2 with ECF No. 40 at 14–17.)

When she was assigned to RHMS, Plaintiff asserts that Defendant knew she was disabled, which disability did not allow Plaintiff to walk fast, walk long distances, climb stairs, run, kneel, jump, or sit for prolonged periods of time. (ECF No. 40 at 5 ¶ 9.) As a result of her alleged disability, Plaintiff states that she orally requested the following accommodations: (1) handicapped parking (id. at 6 ¶ 11); (2) "to be excused for late arrivals at meeting[s] and or session[s] held any time on the lower campus and permission to drive to the lower campus on occasions for such meetings" (id.; see also 10 ¶ 31); (3) that her classes remain in the upper campus when all other 8th grade classes were relocated to the lower campus for the 2010–2011 school year (id. at 7 ¶ 16); and (4) to be allowed to park at the lower campus (id.; see also 10 ¶ 31). In support of her requests for accommodation, Plaintiff asked her physician to provide documentation to support her claims of disability, which allegedly occurred on September 29, 2010. (Id. at 10 ¶ 33.) While the aforementioned requests for accommodation were pending, Plaintiff was placed on administrative leave on November 19, 2010, as a result of an incident in which Plaintiff allegedly struck a female student in her class. (ECF No. 32-3 at 10.) Upon her return from administrative leave on or about June 29, 2011, Plaintiff was advised by Defendant to contact Dr. Sharon Berry-Quinn "to discuss any accommodations that may be necessary or appropriate." (Id. at 10–11.) However, Plaintiff admittedly failed to contact Dr. Berry-Quinn.

(ECF No. 32-7 at 22: 19–25.)

In the summer of 2011, Defendant told Plaintiff that she would be teaching math during the 2011–2012 school year even though she was not certified to teach math.  (Id. at 12 ¶ 37.)  In the 2011–2012 school year, Plaintiff requested several transfers, which requests were denied by Defendant.  (Id. at ¶ 38; see also 19 ¶ 54.)  Additionally, Plaintiff asserts that she "was forced to give grades to students she did not teach, inflate the grades of certain students but not for all students" and "was told by administration that she could either get a wheel chair or quit her job." (Id. at 19 ¶¶ 52–53.)  On December 16, 2011, Plaintiff submitted to Defendant a document specifying conduct that she considered to be evidence of a hostile work environment created by her students.  (ECF No. 40-12.)  Plaintiff reported that her students harassed her with comments, such as "[y]ou do not speak English . . . [y]ou cannot tell me what to do," "[g]o back to your home," "I wish I know some Chinese to talk to her," [g]o back to Africa," and "why doesn't she go back to Africa."  (Id. at 4.)

On January 3, 2012, Plaintiff filed a Charge of Discrimination (the "January Charge") with the United States Equal Employment Opportunity Commission ("EEOC") and the South Carolina Human Affairs Commission ("SCHAC").  (ECF No. 1-1.)  In the January Charge, Plaintiff alleged that she was discriminated against because of her national origin and disability in violation of the ADA, Title VII, and South Carolina Human Affairs Law.  (Id. at 1, 4.)  In the January Charge, Plaintiff stated the following particulars:

> Since my transfer to HMS I have been subjected to assault and battery, and terrible harassment by the students who have the support and backing of the administration.  This began in the 2010–2011 academic year and continued throughout.  This school year ended in June 2011.  This includes pushing me down onto concrete floor, throwing tennis balls at me, throwing broken glass coins and other objects all with the intent on injuring me.  Although the administration was aware of and had been notified of this treatment on a number of occasions it was allowed to continue.

4

I have a disability within the meaning of the Americans with Disabilities Act as amended in 2008 (ADAAA) and or have a history of disability and or was regarded as having a disability within the meaning of the ADAAA. My disability is a seriously and permanently damaged leg which causes me to walk with a severe limp. Because of the limp and damaged leg I can only walk slowly. I look awkward when I maneuver the school's hallways.

Although I asked for reasonable accommodation regarding my disability my employer did the precise opposite by intentionally rearranging the locations of my classrooms and meeting places so that I was forced to walk long distances and more frequently. This caused me severe pain and suffering needlessly.

When I asked for reasonable accommodation under the ADAAA my supervisor, Jacqueline Inabinette, suggested I get a wheelchair or quite [sic!] my job. She also encouraged students to insult me by making negative comments about marks on my skin and face in front of students. She would make such negative comments about me causing students to laugh out loud at me. My employer also would at times disapprove my request to attend scheduled doctor's appointments for pretextual and false reasons. I was singled out for such treatment and I am personally aware of other teachers who were not treated in this negative manner.

Students with the apparent tacit approval of the school's administration would tell me I spoke "yoho-yoho," and that I sounded like I spoke Chinese, was too old to be in the classroom and that they hated old people.

When my supervisor became Rena Bowman (she remains my supervisor) she has tried to provide me reasonable accommodation for my disability. However, the School District, my employer, is still in effect torturing me by placing me in a summary evaluation without just cause or due process, while still forcing me to teach outside of my area of certification. The District's Administration, as seen above returned me to the school where a student had physically assaulted and battered me the previous year.

My employer has encouraged students to be disruptive and disrespectful towards me by, among other ways belittling, humiliating, blaming and chastising me unjustly in front of students.

(Id. at 3–4.) On April 26, 2012, Plaintiff submitted her resignation to Defendant effective April 30, 2012. (ECF No. 32-6 at 2–4.) On November 19, 2012, Plaintiff filed a second Charge of Discrimination (the "November Charge") alleging that after she filed the January Charge, she was retaliated against when her employer created a hostile work environment based on her age, disability and national origin. (ECF No. 40-4 at 2.) In the November Charge, Plaintiff stated particulars as follows:

That the Defendant transferred me to teach a subject that I do not have any experience in. That I have taught biology for several years and have no experience in Math. My employer transferred me to teach math in retaliation for my complaints and my requests for reasonable accommodation.

In retaliation for the EEOC complaint my employer created a hostile work environment by harassing me regarding my disability, my age and my accent. My employer failed and refused to protect me from dangerous students who were violent.

That on April 27, 2012 I was forced to resign my position because of the severe and pervasive environment created by my employer.

That my employer did not offer an explanation for each act of discipline or retaliation that was taken against me.

(ECF No. 40-4 at 2.)

After receiving notice of the right to sue from the EEOC as to the January Charge, Plaintiff filed an action on November 25, 2012, in this court alleging claims for (1) a hostile work environment on account of disability and national origin (Count 1), disability discrimination (Count 2), and national origin discrimination (Count 3). (ECF No. 1 at 14–17.) After receiving notice of the right to sue on the November Charge, Plaintiff filed an Amended Complaint on December 19, 2013, alleging claims for (1) a hostile work environment on account of disability and national origin (Count 1), disability discrimination (Count 2), national origin discrimination (Count 3), retaliation (Count 4), and age discrimination (Count 5). (ECF No. 20 at 15–20.) Defendant answered the Amended Complaint on December 31, 2013, denying its allegations. (ECF No. 23.) On June 27, 2014, Defendant filed its Rule 56 motion. (ECF No. 32.) Plaintiff filed opposition to the Rule 56 motion on August 5, 2014, to which Defendant filed a reply in support of summary judgment on August 29, 2014. (ECF Nos. 40, 46.)

In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 D.S.C., the Magistrate Judge issued her Report and Recommendation on December 5, 2014, recommending that Defendant's Rule 56 motion be granted as to all Plaintiff's claims. (ECF No. 47.) On

December 22, 2014, Plaintiff filed objections to the Report and Recommendation.  (ECF No. 48.)

## II.    LEGAL STANDARD

### A.    The Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with this court.  See Mathews v. Weber, 423 U.S. 261, 270–71 (1976).  The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to - including those portions to which only "general and conclusory" objections have been made - for clear error.  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1).

### B.    Summary Judgment Generally

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248–49 (1986).  A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party.  Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light

most favorable to the non-moving party.  Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).  The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial.  Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).  All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Anderson, 477 U.S. at 249.  "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."  Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).  A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge.  See Latif v. The Cmty. Coll. of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

### III.    ANALYSIS

A.    The Report and Recommendation

In the Report and Recommendation, the Magistrate Judge initially observed that absent direct evidence of discrimination[1], "Plaintiff must prove her allegations under the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny" no matter whether she is "proceeding under the ADA, Title VII, or the ADEA."  (ECF No. 47 at 7.) Therefore, upon her review, the Magistrate Judge determined that (1) Plaintiff's ADA hostile work environment claim fails because there was no evidence of severe, pervasive, unwelcome

---

[1] Plaintiff has not suggested the existence of any direct evidence regarding her claims.  Direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."  Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995).

harassment; (2) the ADA failure to accommodate claim fails because there was no evidence that Plaintiff made a request for a specific accommodation that Defendant refused; (3) the Rule 56 motion should be granted as to Plaintiff's claims for ADA retaliatory discharge, Title VII national origin discrimination, and ADEA age discrimination because she cannot establish that she was performing at a level that met Defendant's legitimate expectations; (4) the Title VII hostile work environment claim fails because the evidence does not support finding that either an employee of Defendant engaged in harassing conduct or that a student's harassing conduct was imputable to Defendant; and (5) the Title VII retaliation claim fails because Plaintiff did not engage in protected activity. (Id. at 8–15.) Based on the foregoing, the Magistrate Judge recommended granting Defendant's Rule 56 motion in its entirety. (Id. at 15.)

B.    Plaintiff's Objections

In her objections to the Report and Recommendation, Plaintiff first asserts that the Magistrate Judge erred by "set[ting] forth the facts in a light most favorable to the Defendant" and thereby failed "to consider any facts from the Plaintiff's point of view." (ECF No. 48 at 6.) Plaintiff then argues in separately numbered paragraphs that the Magistrate Judge failed to consider the following: (1) "Plaintiff's actual age during her employment and where she was born" (id. at ¶ 1); (2) "Plaintiff's education and what her education background was actually in" (id. at 7 ¶ 2); (3) "Plaintiff's history of employment with the Defendant and the fact that the Plaintiff served the Defendant and the students of the District for many years without incident" (id. at ¶ 3); (4) the number of disciplinary referrals made by Plaintiff during her employment with Defendant (id. at 8 ¶ 4); (5) Plaintiff's compliance "with all instructions by each and every individual with the district" (id. at 12 ¶ 6); (6) "Defendant's interaction with the Plaintiff regarding her disability" including the testimony of Defendant's own witness who testified that

"Plaintiff had a problem with absences and . . . requested an accommodation regarding walking" (id. at ¶ 7); (7) "differential treatment suffered by Plaintiff" (id. at 16 ¶ 9; see also 15 ¶ 8); (8) "Plaintiff's concerns regarding Vogt failing to provide the Plaintiff with the tools to make her successful" (id. at ¶ 10); (9) "Defendant's violation of its own policies and procedures with the Plaintiff" (id. at ¶ 11); (10) "issues with the Plaintiff and Ms. Green" (id. at 17 ¶ 12); (11) Plaintiff's communications to Defendant regarding student behavior and its failure to respond, which is why Plaintiff kept her personal notebook (id. at 18 ¶ 13); (12) Plaintiff's placement in SAFE-T resulting from her failure "to allow the Defendant to violate its own policies and procedures" (id. at ¶ 14); (13) the significantly different treatment Plaintiff received because of her age (id. at 19 ¶ 16); (14) "the differential treatment received by the Plaintiff in a meeting in September 2010 and the Defendant's failures in attempting to make the Plaintiff successful by failing and refusing to include the Plaintiff, address the issues with the Plaintiff's performance properly and the Defendant's overall failure to discipline students properly" (id. at ¶ 17); (15) the memorandum submitted in October 2011 by Plaintiff describing the work environment she was being subjected to (id. at 20 ¶ 18); (16) Renee Bowman, who recommended Plaintiff's termination, "was demoted due to her lack of leadership skills" (id. at 21 ¶ 19); (17) "Defendant sent the Plaintiff to a class room management workshop that did not exist in December of 2011" (id. at ¶ 20); (18) "Plaintiff's many requests for transfers" (id. at 22 ¶ 22); (19) "[P]laintiff's many memorandums (id. at ¶ 23); and (20) "the record contained reasonable inferences of discrimination based on Age, National Origin and Disability" (id. at ¶ 24).  Plaintiff further argues that the Magistrate Judge's recommendation was erroneous as to the claims for "Retaliation, Hostile Work Environment and Age Discrimination in Employment Act" because Defendant did not properly address these claims in its Rule 56 motion.  (Id. at 23 ¶ 25.)  Based

on the foregoing, Plaintiff contends that the court should reject the Report and Recommendation.

C.     The Court's Review

In light of the foregoing authorities and the parties' respective positions, the court considers each of the claims relevant to Defendant's Rule 56 motion in turn below.

*1. Hostile Work Environment*

In her first cause of action, Plaintiff alleges that she was subjected to a hostile work environment on account of her disability and national origin. Both Title VII and the ADA prohibit an employer from subjecting an employee to a hostile work environment. See 42 U.S.C. § 2000e-2(a)(1)[2]; 42 U.S.C. § 12112(a)[3]; see also Fox v. Gen. Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001). A plaintiff can establish a hostile work environment claim under both Title VII and the ADA either by directly showing that discrimination motivated an employment decision, or, as is more common, by relying on the indirect, burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Kasznski v. Thompson, 83 F. App'x 526, 527–28 (4th Cir. 2003). Pursuant to the burden-shifting framework, once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for its employment action. Id. If the defendant meets the burden to demonstrate a legitimate, non-discriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext." Texas

---

[2] "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . . ." 42 U.S.C. § 2000e-2(a)(1).

[3] "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  Though intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuasion that the defendant engaged in intentional discrimination remains at all times with the plaintiff.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

In the Report and Recommendation, the Magistrate Judge recommended granting the Rule 56 motion as to Plaintiff's hostile work environment claims because there was no evidence of (1) "unwelcome harassment based on her disability" or (2) "offending conduct based on her national origin" engaged in by or imputable to Defendant.  (ECF No. 47 at 9, 12–13.)  Although Plaintiff did not submit specific objections to the recommendation, she did generally assert that the recommendation as to her hostile work environment claim was erroneous.  (ECF No. 48 at 23 ¶ 25.)

### a.  Hostile Work Environment Based on National Origin

To state a prima facie Title VII claim for a hostile work environment based on national origin, the plaintiff must demonstrate that:  (1) she experienced unwelcome harassment; (2) the harassment was based on her national origin; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.  Baqir v. Principi, 434 F.3d 733, 745–46 (4th Cir. 2006).

As to the hostile work environment claim based on national origin, the court finds that Plaintiff has met her burden of establishing that the alleged unwelcome treatment she received from her students was because of her national origin.  Plaintiff has further shown that her students' ongoing name-calling, mimicking, and other abuse occurring expressly between August and November 2011 (ECF Nos. 40-12, 40-13) was subjectively and objectively severe

and pervasive to alter the conditions of employment and create an abusive atmosphere. As to the imputation of liability to Defendant for harassment by students, Plaintiff has offered evidence showing that Defendant knew or should have known of the harassment by way of her December 16, 2011 document and "[t]he question of whether school officials took appropriate remedial action is a question of fact, not law." Peries v. N.Y.C. Bd. of Educ., No. 97 CV 7109(ARR), 2001 WL 1328921, at *7 (E.D.N.Y. Aug. 6, 2001). Based upon the foregoing, the court finds that Plaintiff has presented sufficient evidence to raise a genuine issue of fact as to whether she was subjected to a hostile work environment based on her national origin in violation of Title VII. Moreover, even assuming that Defendant can carry its burden to produce a legitimate, non-discriminatory reason for the conditions of Plaintiff's employment, Plaintiff has offered sufficient evidence of pretext to create a genuine dispute of fact as to whether Plaintiff was subjected to a hostile work environment on account of her national origin. Therefore, Plaintiff's general objection to the Magistrate Judge's Report and Recommendation is sustained. Accordingly, Defendant's Rule 56 motion on Plaintiff's claim for hostile work environment based on her national origin is denied.

### b. Hostile Work Environment Based on Disability

To establish a hostile work environment claim on the basis of a disability, the plaintiff must show: (1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer. Fox, 247 F.3d at 177.

After careful review of the record, the court concurs in the Magistrate Judge's conclusion that Plaintiff cannot establish that she was subjected to unwelcome harassment as a result of her

disability.  The court reviewed the totality of the harassing conduct by 8th grade students at RHMS alleged by Plaintiff and finds that evidence fails to show that actions perpetrated by the students occurred because Plaintiff had a disability.  As a result, the court overrules Plaintiff's objections and grants the Rule 56 motion on her hostile work environment claim on the basis of a disability.

2.  *Disability Discrimination in Violation of the ADA*

In her second cause of action, Plaintiff asserts two (2) claims that she was discriminated against on account of her disability, first when Defendant refused Plaintiff's request for a reasonable accommodation and second when Defendant denied Plaintiff a position based on consideration of her disability.  (ECF No. 20 at 16 ¶¶ 128, 129, 133.)  The ADA addresses employment issues on the basis of an individual's disability.  See 42 U.S.C. § 12112(a).  Courts analyze ADA claims under a modified version of the above-referenced three-step framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Heiko v. Colombo Savings Bank, 434 F.3d 249, 258 (4th Cir. 2006).

a.  **Failure to Accommodate**

"Plaintiff must establish four elements to establish a prima facie case for failure to accommodate under the ADA: 1) that he was an individual with a disability covered by the statute, 2) that the employer had notice of the disability, 3) that with 'reasonable accommodation he could perform the essential functions of the position,' and 4) that the employer refused to make such accommodations."  Walters v. Thomas & Betts Corp., C/A No. 0:13-1980-MBS, 2014 WL 4717196, at *3 (D.S.C. Sept. 22, 2014) (citing Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001)).

Upon her review, the Magistrate Judge determined that the evidence did not support a

finding that Plaintiff "made a request for a specific accommodation that Defendant refused" and so Plaintiff failed to establish a prima facie case of failure to accommodate. Although Plaintiff specifically references an accommodation regarding walking (ECF No. 48 at 12 ¶ 7) and a general objection to the recommendation (id. at 23 ¶ 25), the court agrees with the Magistrate Judge that the evidence in the record fails to show that Defendant refused a request for reasonable accommodation made by Plaintiff. More specifically, the court observes that the evidence shows an attempt by Defendant to instruct Plaintiff on who she needed to make a request for accommodation to and Plaintiff admittedly failing to contact the specified person. (ECF Nos. 32-3 at 10–11, 32-7 at 22: 19–25.) Therefore, the court grants Defendant's Rule 56 motion on Plaintiff's claim for failure to accommodate under the ADA.

### b. Failure to Hire

"In order to establish a prima facie case of failure to hire under the ADA, the plaintiff must prove by a preponderance of the evidence that: (1) he is within the ADA's protected class; (2) he applied for the [vacant] position in question; (3) he was qualified for that position; and (4) the defendants rejected his application under circumstances that give rise to an inference of discrimination." Malone v. Greenville Cnty., C/A No. 6:06-2631-RBH, 2008 WL 4557498, at *9 (D.S.C. Aug. 11, 2008) (citing Heiko, 434 F.3d at 258).

The court observes that the Magistrate Judge did not address Plaintiff's ADA failure to hire claim. However, upon review, the court finds that this claim fails because the evidence does not clearly establish that there was an allegedly vacant position that Plaintiff applied for and was rejected for under circumstances that give rise to an inference of discrimination. The only allegation relevant to this claim is Plaintiff's contention that she was denied a transfer in August 2011 and in the same month an allegedly "younger less qualified teacher was hired to teach

Biology at the High School." (ECF No. 40 at 12 ¶ 38.) This allegation alone is not enough to establish a prima facie case of failure to hire under the ADA. Therefore, the court grants Defendant's Rule 56 motion on Plaintiff's claim for failure to hire under the ADA.

### 3. National Origin Discrimination in Violation of Title VII

In her third cause of action, Plaintiff asserts that Defendant subjected her to national origin discrimination by (1) "treating the Plaintiff differently than other non-Nigerian teachers," (2) "failing and refusing to transfer the Plaintiff," and (3) "disciplining the Plaintiff and not disciplining other teachers for the same actions." (ECF No. 20 at 17 ¶¶ 139–41.) Title VII protects individuals from discrimination based on their national origin. See 42 U.S.C. § 2000e-2(a)(1); see also Espinoza v. Farah Mfg. Co., Inc., 414 U.S. 86, 88 (1973) ("The term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came.") (Citation omitted). As with her prior claim for disability discrimination, Plaintiff may resort to the McDonnell Douglas burden-shifting framework in the absence of direct evidence of discrimination.

### a. Disparate Treatment

Plaintiff alleges a disparity in treatment between her and teachers not born in Nigeria. To establish a prima facie case of disparate treatment under Title VII, a plaintiff must show (1) she is a member of a protected class; (2) she was performing satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment. Petrosyan v. Delfin Grp. U.S.A., LLC, C/A No. 2:13-cv-2990-PMD, 2015 WL 685266, at *6 (D.S.C. Feb. 18, 2015) (citing, e.g., Austen v. HCA Health Servs. of Va., Inc., 5 F. App'x 253, 254 (4th Cir. 2001)).

The Magistrate Judge recommended granting summary judgment as to Plaintiff's

disparate treatment claim because she could not show that "she was performing her job satisfactorily." (ECF No. 47 at 13.) Although she did not assert specific objections to the Magistrate Judge's recommendation regarding the Title VII disparate treatment claim, Plaintiff maintained in her Rule 56 opposition that Defendant's discrimination made it impossible to meet its performance expectations. (See ECF No. 40 at 31.) The court finds merit in this argument by Plaintiff, but nevertheless grants Defendant's Rule 56 motion because Plaintiff has not identified a similarly situated individual outside her protected class who received more favorable treatment. In this regard, the disparate treatment claim fails because the record does not contain evidence of differential treatment sufficient to establish a prima facie national origin discrimination case. Accordingly, Defendant is entitled to summary judgment on Plaintiff's national origin discrimination claim for disparate treatment.

**b. Failure to Hire**

Defendant allegedly failed to hire Plaintiff or allow her to transfer to another teaching position. The elements of a prima facie Title VII national origin discrimination failure to hire case is the same as a claim for failure to hire made under the ADA. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005) ("(1) she is a member of a protected group, (2) she applied for the position in question, (3) she was qualified for that position, and (4) the defendants rejected her application under circumstances that give rise to an inference of unlawful discrimination."). Upon review, the court finds that this failure to hire claim fails for the same reasons identified above as to Plaintiff's claim for failure to hire in the context of her ADA claim. Accordingly, the court grants the Rule 56 motion as to Plaintiff's claim for failure to hire under Title VII.

### c. Disparate Discipline

Plaintiff alleges a disparity in the discipline that she received versus that received by teachers not born in Nigeria.  In order to establish a prima facie case of discrimination in the context of disparate discipline, the plaintiff must show (1) she is a member of a protected class under Title VII; (2) that she engaged in prohibited conduct similar to that of a person of another national origin; and (3) that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person.  Hoyle v. Freightliner, LLC, 650 F.3d 321, 336 (4th Cir. 2011); Lightner v. City of Wilmington, N.C., 545 F.3d 260, 264–65 (4th Cir. 2008).

Although the Magistrate Judge did not address Plaintiff's Title VII disparate discipline claim, the court finds that Plaintiff has not identified a similarly situated individual outside her protected class who engaged in similar conduct and received more favorable treatment. Therefore, this claim fails because the record does not contain evidence of differential discipline sufficient to establish a prima facie case of national origin discrimination.  Accordingly, Defendants are entitled to summary judgment on this national origin discrimination claim for disparate discipline.

### 4. *Title VII Retaliation*

In her fourth cause of action, Plaintiff alleges that she was retaliated against for engaging in actions protected by Title VII and the ADA.  (ECF No. 20 at 18 ¶ 148.)  Both Title VII and the ADA protect individuals from retaliation.  See 42 U.S.C. § 2000e-3(a)[4]; 42 U.S.C. § 12203(a)[5].

---

[4] "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

[5] "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified,

In order to prevail on a claim of retaliation, a plaintiff must either offer sufficient direct and indirect evidence of retaliation, or proceed under a burden-shifting method.  Under the burden-shifting method, to demonstrate a prima facie case of retaliation under either Title VII or the ADA, a plaintiff must show (1) that he engaged in protected activity; (2) that his employer took an adverse employment action against him; and (3) that a causal connection existed between the protected activity and the asserted adverse action.  Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 242 (4th Cir. 1997); Rhoads v. F.D.I.C., 257 F.3d 373, 392 (4th Cir. 2001).  If the plaintiff establishes a prima facie case of retaliation, the defendant can rebut the presumption of retaliation by articulating a non-discriminatory reason for its action.  Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 271 (4th Cir. 2001) (citation omitted).  At that point, the plaintiff has the opportunity to prove that the employer's legitimate, non-discriminatory reason is pretextual. Id.

In the Report and Recommendation, the Magistrate Judge determined that Plaintiff's retaliation claim failed because she did not "specify in what protected activity she engaged." (ECF No. 47 at 13.)  In this regard, the Magistrate Judge observed that "[t]o the extent that Plaintiff alleges her protected activity in her December 16, 2011, letter alleging nationality and age discrimination, she has failed to show that such activity is protected."  (Id. (referencing ECF No. 40-12).)

Upon review, the court does not agree with the Magistrate Judge that Plaintiff failed to specify in what way she engaged in protected activity.  Viewing the evidence in the light most favorable to Plaintiff, the court discerns that Plaintiff has attempted to show that (1) she engaged in protected activity in August and September 2010 by requesting accommodations and reporting

---

assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).

inappropriate student conduct and the resulting adverse employment action occurred when she was told in the summer of 2011 that she would have to teach math during the 2011–2012 school year (the "2011 retaliation claim"); and (2) she engaged in protected activity when she filed the January Charge on January 3, 2012, and that resulted in the creation of a hostile work environment that led to her constructive discharge on April 30, 2012 (the "2012 retaliation claim"). (Citing ECF No. 40-4 at 2.) In spite of the foregoing, the court agrees with the Magistrate Judge that Plaintiff cannot state a prima facie case of retaliation.

Without direct evidence of retaliatory conduct, the 2011 retaliation claim fails because the temporal proximity between the protected conduct and adverse employment action is too attenuated to support the required inference of a causal connection. In this regard, even if the court assumes that the "summer of 2011" is June 2011, there is a difference of nine (9) months between protected activity in September 2010 and an adverse employment action in June 2011. See, e.g., Rease v. Zax, Inc., C/A No. 3:09-3601, 2009 WL 2998977, at *7 (D.S.C. Sept. 17, 2009) ("Rease fails to show a causal connection based on temporal proximity alone because she was terminated (July 27, 2007) more than nine months after her protected conduct (the First Charge on October 12, 2006).") (Citations omitted). Therefore, the court finds that the nine-month temporal proximity of the 2011 retaliation claim does not satisfy the causation element of a prima facie case of retaliation. Accordingly, Defendant is entitled to summary judgment as to the 2011 retaliation claim.

As to the 2012 retaliation claim, the court finds that the three-month temporal proximity does support an inference of a causal connection. Williams v. Cerberonics, Inc., 871 F.2d 452, 454–57 (4th Cir. 1989) (finding a causal connection between a plaintiff's protected activity and her discharge where the employer, with knowledge of a pending discrimination complaint, fired

plaintiff approximately four months after the complaint was filed). However, the 2012 retaliation claim fails because the evidence does not support a finding that Plaintiff's resignation on April 30, 2012, was a constructive discharge. In the Fourth Circuit, "an employee is constructively discharged 'if an employer deliberately makes the working conditions of the employee intolerable in an effort to induce the employee to quit.'" Whitten v. Fred's Inc., 601 F.3d 231, 248 (4th Cir. 2010) (citations omitted). "A plaintiff alleging constructive discharge must therefore prove two elements: deliberateness of the employer's action, and intolerability of the working conditions." Id. In consideration of the foregoing, the court is not persuaded that the evidence supports a finding that Defendant engaged in conduct with the deliberate intent to force Plaintiff to resign. Therefore, Plaintiff cannot establish a prima facie case of retaliation as to the 2012 retaliation claim. Accordingly, Defendant is entitled to summary judgment on the 2012 retaliation claim.

### 5. Age Discrimination in Violation of the ADEA

Plaintiff's fifth cause of action asserts that she was discriminated against on account of her age in violation of the ADEA when she "was forced to teach in an area of law that she did not have any experience in." (ECF No. 20 at 19 ¶ 157.) The ADEA addresses age-related employment issues.[6] "[A]bsent direct evidence, a plaintiff may utilize the McDonnell Douglas burden-shifting framework involving circumstantial evidence of discrimination." Martin v. Alumax of S.C., Inc., 380 F. Supp. 2d 723, 732 (D.S.C. 2005) (citation omitted). To sufficiently allege a prima facie case of discrimination under the ADEA, a plaintiff must allege "(1) she is a member of a protected class; (2) she suffered [an] adverse employment action; (3) she was

---

[6] "It shall be unlawful for an employer – (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; . . . ." 29 U.S.C. § 623(a)(1).

performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action"; and (4) the adverse employment action raises a reasonable inference of unlawful discrimination.  Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004).

In the Report and Recommendation, the Magistrate Judge recommended granting the Rule 56 motion as to Plaintiff's ADEA claim because her "performance was below expectations." (ECF No. 47 at 15.)  In her objections to this recommendation, Plaintiff failed to cite specific error, but generally asserted that the recommendation was erroneous because the record contained reasonable inferences of age discrimination based on the different treatment she received on account of her age.  (ECF No. 40 at 19 ¶ 16, 22 ¶ 24, 23 ¶ 25.)

Upon review of the evidence, the court does not agree with the Magistrate Judge that Plaintiff failed to present sufficient evidence to create an issue of fact as to whether her job performance was satisfactory at the time she suffered an allegedly adverse employment action. Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 515–16 (4th Cir. 2006) ("[A] plaintiff must show by a preponderance of the evidence that he met the employer's legitimate job expectations to prove his prima facie case, the employer may counter with evidence defining the expectations as well as evidence that the employee was not meeting those expectations.")  However, there is insufficient evidence in the record to support a finding that Defendant required Plaintiff to teach math instead of biology in 2011–2012 school year because of her age.  Therefore, Plaintiff cannot establish a prima facie case of age discrimination.  Accordingly, the court grants Defendant's Rule 56 motion as to Plaintiff's claim for age discrimination.

## IV.     CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS IN PART**

**AND DENIES IN PART** the Motion for Summary Judgment of Defendant Orangeburg Consolidated School District Five.  (ECF No. 32.)  The court **DENIES** the Motion for Summary Judgment as to Plaintiff's claim for a hostile work environment based on her national origin. The court **GRANTS** the Motion for Summary Judgment as to Plaintiff's remaining claims for hostile work environment on account of her disability, disability discrimination, national origin discrimination, retaliation, and age discrimination.  The court **ACCEPTS IN PART AND REJECTS IN PART** the Magistrate Judge's Report and Recommendation and incorporates it herein by reference.

IT IS SO ORDERED.

United States District Judge

March 27, 2015
Columbia, South Carolina